IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CHARLES ROBINSON,<br><br>                         *Plaintiffs,*<br><br>v.<br><br>KYLE BARTLOW, MARIAH GENTRY, JOEYBRA LLC, AND DOES 1-5, INCLUSIVE,<br>                         *Defendants.* | CASE NO. 3:12-cv-00024<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Defendants seek dismissal of this patent infringement case for lack of personal jurisdiction under Rule 12(b)(2) and improper venue under Rule 12(b)(3). In the alternative, Defendants seek transfer to the Western District of Washington under 28 U.S.C. §§ 1404(a) or 1406. Defendants filed their Motion to Dismiss or Transfer on July 25, 2012 (docket no. 17), and Plaintiff filed a response on August 17, 2012, which contained a request for jurisdictional discovery. A telephonic hearing on the issues briefed by both parties took place on September 5, 2012, at which time I requested additional information from Defendants regarding their methods for charging customers and the number of Virginia residents that donated money to their company. Defendants provided that information on September 17, 2012, prompting Plaintiff to file an additional opposition to Defendants' Motion to Dismiss or Transfer, which was considered for the purposes of this memorandum opinion. For the reasons that follow, I deny Defendants' motion to dismiss for lack of personal jurisdiction and improper venue as to the Defendant JoeyBra LLC, and I will grant Plaintiff's request for jurisdictional discovery as to the individual Defendants Kyle Bartlow, Mariah Gentry, and Does 1-5.

I.  **FACTUAL BACKGROUND**

Plaintiff Charles Robinson, a citizen of Great Britain, filed a design patent application with the United States Patent and Trademark Office ("PTO") on November 5, 1999. On October 2, 2001, after its examination of Plaintiff's application, the PTO issued U.S. Patent D448-541 (the "'541 Patent"), entitled "Brassiere" and featuring the design for a pocketed bra. Mr. Robinson is bringing this patent suit against Defendants Gentry, Bartlow, Joeybra LLC, and other unnamed individuals, referred to as Does 1-5, due to the marketing and selling of their allegedly infringing "JoeyBra" product.

The named Defendants in this case, Ms. Gentry and Mr. Bartlow, are based in Seattle, WA. Their business entity JoeyBra LLC was organized in Washington state, and has its principle place of business in Bothell, WA. According to Defendant Gentry, she and Bartlow conceived of and developed the JoeyBra design[1] while they were college students at the University of Washington. In early 2012, Mr. Bartlow and Ms. Gentry formed JoeyBra LLC in order to bring their idea to the market, and in April 2012, Bartlow and Gentry entered their JoeyBra concept into a business plan competition that was held in Washington. Defendants' entry was one of sixteen selected to advance, and their product received coverage from several news outlets. The competition ended in May 2012.

Around that time, on May 22, 2012, Plaintiff filed its Complaint with this Court. Plaintiff alleges that Defendants have been knowingly, willfully, and intentionally infringing on his patent, both directly and indirectly, by making, importing, and selling the JoeyBra product (the "Product") in the United States. In its Complaint, Plaintiff states that the JoeyBra features a

---

[1] The Defendants' website describes their finished Product as follows: "The first sexy & comfortable pocket bra. JoeyBra gives you the freedom to go anywhere, do anything, and carry anything without lugging a purse. Discreetly holds a cellphone, ID, and key on the side of your bra with easy access."  Joeybra Home Page, http://www.joeybra.com (last visited Oct. 3, 2012).

pocketed design that is covered by his '541 Patent. Soon after filing the Complaint, on June 14, 2012, Plaintiff filed a Motion for a Preliminary Injunction (docket no. 7) in an effort to stop Defendants from making further sales of the JoeyBra.[2] After holding a hearing on Plaintiff's Motion for a Preliminary Injunction on July 10, 2012, this Court declined to rule, since Defendants disclosed their intention to move for dismissal or transfer. I stated that I intended to resolve the jurisdictional issues before considering the merits of Plaintiff's injunction request.

As mentioned, on July 25, 2012, Defendants filed a motion to dismiss for lack of personal jurisdiction and improper venue, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), or in the alternative, for a dismissal, transfer, or change of venue to the Western District of Washington, pursuant to 28 U.S.C. §§ 1404(a) or 1406. Plaintiff filed an opposition on August 7, 2012, in which it requested jurisdictional discovery if this Court decided not to deny Defendants' Motion to Dismiss or Transfer outright. Upon the Court's request, Defendants submitted additional factual information on September 17, 2012, regarding their business connections with Virginia residents. Most recently, on September 26, 2012, Plaintiff filed an additional opposition to Defendants' Motion to Dismiss or Transfer, in which it incorporated the newly disclosed information into its earlier arguments.

## II. APPLICABLE LAW AND LEGAL STANDARDS

### A. Personal Jurisdiction

Federal Circuit law governs personal jurisdiction—and all other matters that are sufficiently unique to patent law—in this suit. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21

---

[2] As of July 24, 2012, the date of Ms. Gentry's first Declaration, Defendants had received 719 orders for the Joeybra nationwide.

F.3d 1558, 1564 (Fed. Cir. 1994) ("Under [jurisdictional] circumstances such as these, we have held we owe no special deference to regional circuit law."); *see generally* Fed. Judicial Ctr., *Anatomy of a Patent Case* 38 (2009) ("The Federal Circuit applies its own law, rather than that of the regional circuits, in determining whether personal jurisdiction exists over an out-of-state defendant in a patent suit.").

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides for the dismissal of an action when the court lacks personal jurisdiction over a defendant. Given that no evidentiary hearing regarding jurisdiction has taken place, at this stage, "the burden on plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).[3] Further, when a defendant raises this challenge, "all factual disputes must be resolved in [the plaintiff's] favor in order to evaluate its prima facie showing of jurisdiction." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002).

In order for this Court to properly exercise personal jurisdiction over the non-resident Defendants, a two-step inquiry that considers the strictures of the Constitution and the relevant state statute is required. *See Autogenomics*, 566 F.3d at 1017 ("Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process.") (citations omitted). In this case, "[b]ecause Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become

---

[3] The court in *Rannoch, Inc. v. Rannoch Corp.*, 52 F. Supp. 2d 681 (E.D. Va. 1999) states that a plaintiff must ultimately prove a ground for jurisdiction by the preponderance of the evidence. *Id.* at 683–84. *Rannoch*, however, relies on *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), which, in turn, expressly applies the preponderance standard only to cases in which an evidentiary hearing pertaining to jurisdiction has taken place. *Id.* at 676.

one." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (citation and internal quotation marks omitted). The appropriate question, then, is whether the Defendants have sufficient "minimum contacts with [this forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted).

There are two forms of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). "[A] forum does not have general jurisdiction over a defendant business entity unless the defendant has contacts with the forum state that qualify as 'continuous and systematic general business contacts.'" *Campbell Pet Co. v. Miale*, 542 F.3d 879, 883 (Fed. Cir. 2008) (quoting *Helicopteros*, 466 U.S. at 416). Neither the individual Defendants nor their LLC have engaged in the substantial or continuous contacts with Virginia that is necessary for this Court to exercise general jurisdiction. As mentioned, the named Defendants in this matter reside in Seattle, WA, and their LLC was organized and has its principal place of business in that state as well. Further, Defendants have no offices in Virginia, engage no employees, sales personnel, or independent contractors in Virginia, have no bank accounts, telephone listings, or licenses in Virginia, and are not subject to taxation in Virginia. Neither the company's website nor online fundraising presence specifically or exclusively target Virginia residents. Based on the parties' briefs and arguments, it is uncontroverted that general personal jurisdiction does not exist in this case, and this Court's discussion will focus on specific jurisdiction.

An inquiry into specific jurisdiction is "based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and

5

systematic." *Autogenomics*, 566 F. 3d at 1017 (citations omitted). A district court accomplishes its inquiry using a three-part test, considering whether:

> (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. With respect to the last prong, the burden of proof is on the defendant, which must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" under the five-factor test articulated by the Supreme Court in *Burger King*.

*Autogenomics*, 566 F.3d at 1018 (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006) (further quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985))).

### B. Venue

Questions of venue in patent actions are governed by 28 U.S.C. § 1400(b). Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." For the purposes of venue, a defendant resides in any district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir. 1990).

Rule 12(b)(3) provides for dismissal for improper venue. "Venue is based on the facts alleged in the well-pleaded complaint." *Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) (citations omitted). Even when venue is proper, under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district, "[f]or the convenience of parties and witnesses, [and] in the interest of justice." And under 28 U.S.C. § 1406(a), when venue is improper, a district court can either dismiss the case, or "if it be in the interest of justice," transfer it to "any district or division in which it could have been brought."

## III. DISCUSSION

### A. Personal Jurisdiction over Defendant JoeyBra LLC

The Defendants' most recent filing, a supplemental declaration in support of its Motion to Dismiss or Transfer, discloses that JoeyBra LLC received twenty-seven orders from Virginia residents using its website, and it shipped its Product to eight of those customers.[4] To date, six out of those eight customers have returned the Product, and all Virginia residents who placed an order have been refunded.[5] On or around September 17, 2012, nearly four months after Plaintiff filed its Complaint, Defendants disabled the option to ship any future Products to Virginia.

In addition to the orders that were placed by and fulfilled for Virginia customers using the JoeyBra website, Defendant Gentry states that three Virginia residents were shipped Products due to their contributions to the JoeyBra LLC through the Kickstarter fundraising website. Defendant Gentry describes Kickstarter as "a crowd funding website where supporters can pay money in exchange for the release of a future product or donate to the development of a product." Those three Virginia residents donated $30.00 each, and in return were shipped the JoeyBra Product. At this point, Defendants have been unable to provide refunds for its Virginia donors, or recall the Products that were shipped.

These transactions with Virginia residents and shipments into the Commonwealth indicate that JoeyBra LLC purposefully availed itself of the privilege of conducting business in Virginia. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed.

---

[4] According to Defendants, JoeyBra LLC uses a third-party fulfillment center in New Jersey to fill orders and ship products. Defendants had initially stated that only two Products "were inadvertently and unknowingly shipped to Virginia," with both shipments occurring after the date on which Plaintiff had filed its Complaint.

[5] Ms. Gentry states that JoeyBra LLC uses PayPal for payment purposes when customers place orders through their website. Specifically, customers who wish to place an order submit their credit card information to PayPal, which in turn sends the funds to JoeyBra LLC. Defendant Gentry has confirmed that a customer's credit card is charged by PayPal at the time an order is placed.

Cir. 1998) ("Even a single act can support jurisdiction, so long as it creates a substantial connection with the forum, as opposed to an attenuated affiliation.") (citations and internal quotation marks omitted). To illustrate, in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), the Federal Circuit considered personal jurisdiction in a case brought in the Eastern District of Virginia by the holder of a design patent against the manufacturer and importer of an allegedly infringing ceiling fan. There the Federal Circuit found personal jurisdiction to exist, observing that "[t]he allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel," and "[n]o more is usually required to establish specific jurisdiction" when "[t]he cause of action for patent infringement is alleged to arise out of these activities." *Id.* at 1565. While JoeyBra LLC used a third-party shipping center, its managers understood and were aware of the processes and channels through which orders were placed and fulfilled.[6] The subsequent business transactions conducted in and for Virginia residents give rise to this present action. Given the orders and shipments into Virginia that have already occurred, even if the Defendants provide refunds for and obtain returns from all its customers and donors, specific personal jurisdiction over JoeyBra LLC will still exist.

The active nature of the JoeyBra LLC website provides an additional basis for this Court's exercise of specific personal jurisdiction over the Defendant LLC. In contrast to a "passive" website, through which a defendant can only display information to potential customers, an "active" website allows a defendant to enter into contracts, make transactions, and presents a much stronger case for the exercise of specific jurisdiction. *See* 4A Charles Alan Wright, et al., *Federal Practice & Procedure* § 1073.1 (3d ed. 2002) (discussing a sliding scale

---

[6] Defendant Gentry states in her most recent Declaration that she is "knowledgeable about JoeyBra LLC's products, business practices, corporate structure, and methods and manner of operation at issue in this lawsuit."

8

for websites' levels of user-interactivity established by *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp 1119 (W.D. Pa. 1997)). Because visitors to the JoeyBra LLC website can view products, prices, and place orders, it is best described as the "active" variety. *See Zippo*, 952 F. Supp at 1124 (describing "active" websites as ones where a defendant "clearly does business over the internet" and as typical grounds for finding personal jurisdiction). For this case in particular, infringement occurs when a defendant "*offers* to sell . . . any patented invention," 35 U.S.C. § 271(a) (emphasis added), and Defendants' website can be fairly said to have offered to sell the allegedly infringing JoeyBras to Virginians.[7] Given its website and the sales and shipments that were actually made in Virginia, through an established stream of commerce, this Court may exercise specific jurisdiction over Defendant JoeyBra LLC, subject to the final "reasonableness and fairness" prong of the test.

In its inquiry into the reasonableness and fairness of jurisdiction, the Federal Circuit considers the five *Burger King* factors: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009) (citing *Burger King*, 471 U.S. at 477). Together, these factors may establish a "compelling case" that would "render jurisdiction unreasonable" despite the presence of minimum contacts. *Id.* However, "these cases are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so

---

[7] As mentioned, before disabling the shipping option for Virginia customers on September 17, 2012, JoeyBra LLC had charged the credit cards of twenty-seven Virginia residents and shipped Products to eight of them due to their online orders.

attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills*, 21 F.3d at 1568.

This Court's exercise of personal jurisdiction over JoeyBra LLC is reasonable and fair. Despite a potential travel burden on the Defendant LLC's officers and agents based in Washington, this case does not qualify as one of the rare instances in which dismissal would be proper based on reasonableness and fairness considerations. *See Synthes,* 563 F.3d at 1299 (held that requiring a Brazilian defendant to travel to the United States from Brazil in order to defend against a patent infringement suit was "not unduly burdensome."); *see also Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,* 297 F.3d 1343, 1356 (Fed. Cir. 2002) (finding burden on Canadian corporation subject to litigation in Kansas to be "relatively minimal."). Further, Plaintiff is the co-owner and co-manager of the Mirage Apparel, LLC licensee, which is located in Virginia. In regards to the second and fifth factors, the Commonwealth "has an interest in discouraging injuries that occur within the state," and "[t]hat interest extends to . . . patent infringement actions such as the one here." *Beverly Hills*, 21 F.3d at 1568 (citation omitted). As for the fourth factor, the Western District of Virginia, at this point, does not appear to be any less efficient than an alternative forum to adjudicate this dispute. Thus, distance alone between JoeyBra LLC's principal place of business and the forum state, the home of Plaintiff's licensee, is not "compelling" enough to "render jurisdiction unreasonable" against the LLC. *See Burger King*, 471 U.S. at 477.

### B.  Personal Jurisdiction over Defendants Gentry, Bartlow, and Does 1-5

In her most recent Declaration, Ms. Gentry states that "[n]either I nor Co-Defendant Kyle Bartlow sell any of the bra products that are the subject of this lawsuit directly . . . [and] all sales, solicitations, distribution or other commercialization of the product is done solely through Co-

Defendant JoeyBra LLC, which we own and control." Plaintiff argues that there should be no distinction between the named Defendants, as in its view the individual Defendants are completely intertwined with their LLC. At the September 5, 2012 hearing, Plaintiff noted that the Defendants applied for a patent in their individual names, and argued that they are the face of their company and have used their unique position as college students to market their Product. To illustrate, Plaintiff noted both during the hearing and in its most recent opposition memorandum that the individual Defendants personally recorded a Kickstarter advertising message in which they disclosed their names and position as students at the University of Washington.[8] The JoeyBra LLC entry on Kickstarter.com also features the Defendants' names and a link to Ms. Gentry's Facebook page. In short, Plaintiff contends that the individual Defendants should not be able to hide behind the JoeyBra LLC for jurisdictional purposes.

Plaintiff's Complaint, on its face, implicates the individual Defendants and the corporate Defendant equally and separately. *See* Pl.'s Compl. at 1. In other words, there is no allegation that the individual Defendants were serving as the alter egos of the LLC. In the recent Federal Circuit case *Grober v. Mako Products*, 686 F.3d 1335 (Fed. Cir. 2012), the court upheld the district court's dismissal of the only two shareholders of the appellee-defendant for lack of personal jurisdiction, stating that "[t]he fiduciary shield doctrine buffers corporate officers from personal jurisdiction when their official duties are their only contact with a forum state." *Grober*, 686 F.3d at 1347. While the Fourth Circuit has held repeatedly that the "fiduciary shield doctrine" is inapplicable when agents themselves take part in the conduct in the forum state that gives rise to a Plaintiff's claim, *see Perdue Farms, Inc. v. Hook*, 1997 WL 672025, at *5 (W.D. Va. 1997) (finding personal jurisdiction over corporate defendant's agent after he personally

---

[8] Ms. Gentry had previously asserted that "[n]either Mr. Barlow, JoeyBra LLC nor I do any advertising for our product other than to maintain a website and a presence on Facebook and Twitter."

visited forum state at least four times), "[i]n the typical case, the contacts of a company are not attributed to a corporate agent for jurisdictional purposes." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 177 (4th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). Still, an individual defendant "is not immune from jurisdiction in Virginia merely because [his or her] contacts with the Commonwealth were made ostensibly on behalf of [the corporation]." *ePlus Tech., Inc.*, 313 F.3d at 177. Thus, this Court's exercise of jurisdiction will turn on the Defendants' personal contacts with the Commonwealth. *See id.*

At this stage, Plaintiff has not shown that Defendants, as individuals, have expressly directed their business activities, products, or advertising to Virginia residents. As discussed, the individual Defendants personally solicited donations through Kickstarter.com, leading to contributions from and shipments to Virginia. However, their personal efforts for the online Kickstarter campaign seem most analogous to advertising in a national trade publication, which the *Grober* court held does not give rise to state-specific jurisdiction where appellants could not show that an appellee-defendant had "targeted" the state in question. *See Grober*, 686 F.3d at 1347; *see generally 3D Systems, Inc. v. Aarotech Laboratories*, 160 F.3d 1373 (Fed. Cir. 1998) ("Exercise of personal jurisdiction by [forum state] over president of patentee's competitor . . . would violate due process, where president did not direct any activities individually toward [forum], and patentee demonstrated no basis for disregarding corporate form."). Indeed, Ms. Gentry states that the individual Defendants "do not run any ads in Virginia, nor do [they] target any ads toward Virginia." At this point, "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint," *Bakker*, 886 F.2d at 676, Plaintiff has not established a prima facie case for jurisdiction over the individual Defendants Gentry, Bartlow, and Does 1-5.

## C. Jurisdictional Discovery Regarding Defendants' Contacts with Virginia

Plaintiff requested jurisdictional discovery if this Court does not outright deny Defendants' Motion to Dismiss or Transfer in its first opposition brief, which it filed on August 7, 2012. As Plaintiff cited, jurisdictional discovery is appropriate when "the existing record is inadequate to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery." *Trintec Industries, Inc. v. Time To Invent, LLC*, 395 F.3d 1275, 1283 (Fed. Cir. 2005) (remanding to lower court where record on appeal was insufficient to determine whether court had personal jurisdiction over nonresident patent infringement defendant). Specifically, Plaintiff requested discovery to determine the nature of communications the individual Defendants may have had with potential and actual customers and donors from Virginia, as well as information regarding the targeting of Defendants' advertising efforts.

Defendants have already supplemented some of the information they initially provided for the Court. Following the September 5, 2012 telephonic hearing, at the Court's request, Defendants disclosed the number of Virginia residents who were donors to their Kickstarter fundraising campaign, as well as the methods by which their customers were charged when placing an order using the JoeyBra LLC website. Upon providing this additional information, *see supra* p. 7, Defendants also corrected several of their earlier disclosures, including the number of online customers from Virginia, and the number of orders that were actually fulfilled. Further, while Defendants highlighted issues of timing in both their July 25th Motion to Dismiss or Transfer and their August 17, 2012 response (Ms. Gentry's declaration stated that no products were shipped to any customers until after Plaintiff commenced its suit), Defendants did not provide any further details or clarifications as to when the orders were placed by Virginia

13

residents (including Virginia donors), or when those additional shipments were made in their most recent disclosure. In short, while it has not yet met its prima facie burden, Plaintiff has demonstrated that it may supplement its jurisdictional allegations as to the individual Defendants through discovery.

### D. Venue as to Defendant JoeyBra LLC

Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Defendant JoeyBra LLC, as "an entity with the capacity to sue and be sued in its common name under applicable law" is "deemed to reside . . . in any judicial district in which [it] is subject to the court's personal jurisdiction . . . ." 28 U.S.C. § 1391(c)(2). As discussed, personal jurisdiction is proper in the Western District of Virginia as to JoeyBra LLC, *see supra* p. 10, and therefore the LLC defendant is deemed to "reside" in this judicial district as well. Thus, under § 1400(b), venue as to JoeyBra LLC is proper in the Western District of Virginia.[9]

### E. Venue as to Individual Defendants Gentry, Bartlow, and Does 1-5

The individual Defendants, on the other hand, "reside" where they are domiciled, *see* 28 U.S.C. § 1391(c)(1), which is in the state of Washington. While venue is proper as to the Defendant JoeyBra LLC, "venue as to corporate employees charged with personal liability for acts taken as individuals, not as the alter ego of the corporation, does not flow automatically to forums in which venue is proper as to the corporation." *Hoover Grp., Inc. v. Custom Metalcraft,*

---

[9] The second way to satisfy venue under § 1400(b) ("where the defendant has committed acts of infringement *and* has a regular and established place of business") (emphasis added) cannot apply to JoeyBra LLC, since the Defendant LLC clearly does not have a "regular and established place of business" in the Western District of Virginia.

*Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996). Plaintiff's Complaint does not allege that JoeyBra LLC is a sham corporation, and both Virginia courts and the Federal Circuit strongly adhere to the principle that a corporation is a legal entity separate and distinct from the shareholders or members who compose it. *See C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 134 (4th Cir. 2002) ("Virginia courts clearly regard corporate veil-piercing as an extraordinary remedy, permitted only in exceptional circumstances when necessary to promote justice.") (citations and internal quotations omitted); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1331 (Fed. Cir. 1999) ("The corporate entity deservers respect and legal recognition unless specific, unusual circumstances justify disregarding the corporate structure.").

As discussed, Plaintiff's Complaint implicates the individual Defendants and the Defendant LLC equally and separately. "When the cause of action is personal to the individual defendant[s]," as it appears to be here, given that the Complaint does not allege that the individual Defendants were serving as the alter egos of the LLC, "the venue requirement must be met as to [those] defendant[s]." *Hoover*, 84 F.3d at 1410. Neither Mr. Bartlow nor Ms. Gentry can be considered to "reside" in Virginia for venue purposes under § 1400(b), and neither Defendant has an established place of business in the Commonwealth. Still, there is precedent for finding venue proper as to an out-of-state officer under §§ 1400(b) and 1391(c) due to the ownership, control, and active management of an allegedly infringing corporation. *See Hoover*, 84 F.3d at 1410 (upholding district court ruling for proper venue as to individual defendant); *cf. Dimensional Media Associates, Inc. v. Optical Products* 42 F.Supp.2d 312, 316 n.3 (S.D.N.Y. 1999) (While there is some authority for the notion that venue for personal liability of an owner/officer for acts of infringement by the corporation "may *reasonably* be based on the venue provisions for the corporation . . . [t]he weight of authority in this district . . . is to the contrary.")

15

(emphasis in original). At this stage, I will await the results of jurisdictional discovery for the purposes of determining the proper venue as to the individual Defendants, and, if necessary, to consider Defendants' request to transfer this case to the U.S. District Court for the Western District of Washington.[10]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (3) as to the Defendant JoeyBra LLC is denied. This Court will await the results of jurisdictional discovery for the purposes of ruling on Defendants' motion as to Defendants Bartlow, Gentry, and Does 1-5, as well as considering Defendants' alternative request to transfer this case to the Western District of Washington.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this __3rd__ day of October, 2012.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[10] In contrast to personal jurisdiction and venue challenges in patent cases, transfer of venue requests are analyzed under the laws of the appropriate regional circuit, not the Federal Circuit. *See, e.g., Micron Tech., Inc. v. Rembus Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011) (applying Third Circuit law); *In re Nintendo Co.*, 589 F.3d 1194, 1197–98 (Fed. Cir. 2009) (applying Fifth Circuit law).