IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CHARLES ROBINSON,<br>                            *Plaintiff,*<br><br>v.<br><br>KYLE BARTLOW, MARIAH GENTRY, JOEYBRA LLC, AND DOES 1-5, INCLUSIVE,<br>                            *Defendants.* | CASE NO. 3:12-cv-00024<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

      This matter is before the Court on Plaintiff's motion for a preliminary injunction (docket no. 7), and Defendants' motion to dismiss for lack of personal jurisdiction and improper venue (docket no. 17), as to the individual Defendants Kyle Bartlow, Mariah Gentry, and Does 1-5. A hearing on Plaintiff's motion took place on July 10, 2012. I declined to rule on Plaintiff's motion at that time, since Defendants disclosed their intention to move for dismissal or transfer. I stated that I intended to resolve the jurisdictional issues in this case before considering the merits of Plaintiff's injunction request.

      At this point, this Court has received sufficient information to rule on Defendants' motion to dismiss for lack of personal jurisdiction and improper venue.[1] Accordingly, I will also resolve

---

[1] On July 25, 2012, Defendants filed a motion to dismiss for lack of personal jurisdiction and improper venue, and in the alternative, sought transfer to the Western District of Washington. Plaintiff filed a response on August 17, 2012, which contained a request for jurisdictional discovery. On October 3, 2012, I denied Defendants' motion to dismiss as to the Defendant JoeyBra LLC, and I granted Plaintiff's request for jurisdictional discovery as to the individual Defendants Kyle Bartlow, Mariah Gentry, and Does 1-5.
    After the parties exchanged filings regarding the Court's October 3rd order, Magistrate Judge B. Waugh Crigler held a status conference to resolve any remaining disputes. On December 17, 2012, Judge Crigler ordered that Plaintiff's discovery requests be limited to information that is relevant to or leads to discoverable evidence concerning jurisdictional issues. Pursuant to Judge Crigler's ruling, Defendants had until December 29, 2012, to respond to those discovery requests.
    A status conference took place by telephone on March 4, 2013. Despite Judge Crigler's deadline, Plaintiff stated that from his perspective, discovery had yet to be completed, and requested more time to obtain information in regards to the content of Defendants' conversations with their donors from Virginia. In response, Defendants

Plaintiff's motion for preliminary injunctive relief. For the following reasons, I will deny Plaintiff's motion for preliminary injunctive relief, and I will grant Defendants' motion to dismiss for lack of personal jurisdiction as to the individual Defendants Kyle Bartlow, Mariah Gentry, and Does 1-5.

### I. BACKGROUND

Plaintiff filed this infringement case in May 2012, which stems from a design patent, U.S. Patent D448-541 (the "'541 Patent"), Plaintiff received in 2001 for a bra design with pockets. Plaintiff became aware of Defendants' product, the JoeyBra, shortly after Mr. Bartlow and Ms. Gentry entered their concept into a business plan competition held in Washington in April 2012.[2] Plaintiff contends that the JoeyBra features a pocketed design that infringes on his patent, and on June 14, 2012, moved for a preliminary injunction to halt Defendants' website sales and other promotional activities while this litigation is pending. In his motion, Plaintiff states that he is likely to succeed on the merits of his infringement claim, that an injunction is necessary to prevent irreparable harm, the equities are balanced in his favor, and that public policy favors the granting of a preliminary injunction in this case.

During the July 2012 hearing, Defendants contended that Plaintiff had not shown substantial irreparable harm in this case, as Plaintiff did not have a product for sale on the market. Defendants also addressed the merits of Plaintiff's infringement claim, arguing that the

---

stated that they have turned over all relevant information, and that any more specific questions could be better addressed in a deposition.

On March 19, 2013, Plaintiff filed a second supplemental memorandum opposing Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), which I considered for the purposes of this memorandum opinion.

[2] The Defendants' website describes the JoeyBra as follows: "The first sexy & comfortable pocket bra. JoeyBra gives you the freedom to go anywhere, do anything, and carry anything without lugging a purse. Discreetly holds a cellphone, ID, and key on the side of your bra with easy access." Joeybra Home Page, http://www.joeybra.com (last visited March 18, 2013).

JoeyBra design is substantially different from Plaintiff's '541 Patent. Given Defendants' stated intention to move to dismiss this matter on jurisdictional grounds, and the fact that any website sales Defendants made in the meantime could be documented, I declined to rule on Plaintiff's request for a preliminary injunction at that time.

Defendants eventually moved to dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue, and on October 3, 2012, I denied Defendants' motion to dismiss as to the Defendant JoeyBra LLC. However, in light of new information that JoeyBra LLC had three Kickstarter donors from Virginia, and Defendants' correction of a few prior disclosures, I found that Plaintiff had demonstrated the possibility of supplementing its jurisdictional allegations through additional information.[3] Accordingly, I granted Plaintiff's request for further discovery.

As mentioned, despite Judge Crigler's December 29, 2012 discovery deadline, during the status hearing on March 4, 2013, Plaintiff stated that he wishes to obtain further information from Defendants. Plaintiff noted that Ms. Gentry provided a link to her Facebook account on the Kickstarter page for JoeyBra LLC as a means for potential backers to contact the Defendants, and stated that he is still seeking details regarding communications Defendants had with Virginia donors, as well as surveys that Virginia donors allegedly submitted. In response, Defendants stated that they had provided all the information readily available to them at this time, and that more specific questions were better suited for a deposition.

---

[3] Specifically, when Defendants disclosed that three Virginia residents were donors to their Kickstarter fundraising campaign, pursuant to the Court's September 2012 request, Defendants also corrected several of their earlier disclosures, including the number of online customers from Virginia and the number of orders that were fulfilled. Defendants stated during the March 4, 2013 status hearing that the reason for the small discrepancy was due to the terms that Defendants used ("Va" versus "Virginia") when searching for prior orders in their database.

## II. LEGAL STANDARD

### A. Preliminary Injunction

Under 35 U.S.C. § 283, a patentee may seek a preliminary injunction against an alleged infringer. The law of the Federal Circuit governs preliminary injunctions in patent cases, *see Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988), and the issuance of an injunction is a matter largely within the discretion of the trial court. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375 (Fed. Cir. 2009).

To obtain a preliminary injunction, Plaintiff must show: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities is in his favor, and (4) an injunction is in the public's interest. *Id.* at 1375-76 (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008)). "[C]ourts considering whether to impose preliminary injunctions must separately consider each *Winter* factor," *Pashby v. Delia*, 2013 WL 791829, at *8 (4th Cir. March 5, 2013), and the burden of proof is on the patentee, as it would be at trial. *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010); *Titan Tire*, 566 F.3d at 1376 ("In assessing whether the patentee is entitled to the injunction, the court views the matter in light of the burdens and presumptions that will inhere at trial.") (citation omitted).

### B. Personal Jurisdiction

As with preliminary injunctions, in a patent infringement case, "the law of the Federal Circuit . . . determine[s] personal jurisdiction." *Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307 (Fed. Cir. 2005). At this stage, "the burden on plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Furthermore, "all factual

4

disputes must be resolved in [the plaintiff's] favor in order to evaluate its prima facie showing of jurisdiction." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002).

"Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause," *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002), the appropriate question here is whether the Defendants have sufficient "minimum contacts with [this forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted).

There are two forms of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). As discussed in the Court's October 3, 2012 opinion, it is uncontroverted that general jurisdiction does not exist in this case. On the other hand, specific jurisdiction is "based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (citations omitted). A district court accomplishes its inquiry into specific jurisdiction using a three-part test, considering whether:

> (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. With respect to the last prong, the burden of proof is on the defendant, which must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" under the five-factor test articulated by the Supreme Court in *Burger King*.

*Autogenomics*, 566 F.3d at 1018 (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006), further quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Plaintiff has the burden of proving parts one and two of the test, and then the

5

burden shifts to the defendant to prove that personal jurisdiction is unreasonable. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).

### C. Venue

Questions of venue in patent actions are governed by 28 U.S.C. § 1400(b). Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." For the purposes of venue, a defendant resides in any district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir. 1990).

Rule 12(b)(3) provides for dismissal for improper venue. "Venue is based on the facts alleged in the well-pleaded complaint." *Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) (citations omitted). Even when venue is proper, under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district, "[f]or the convenience of parties and witnesses, [and] in the interest of justice." And under 28 U.S.C. § 1406(a), when venue is improper, a district court can either dismiss the case, or "if it be in the interest of justice," transfer it to "any district or division in which it could have been brought."

### III. DISCUSSION

### A. Plaintiff's Motion for Preliminary Injunction

*1. Plaintiff's Likelihood of Success on the Merits*

For Plaintiff, the patentee, to establish that he is likely to succeed on the merits of his claim, he "must show that [he] will likely prove infringement, and that [he] will likely withstand challenges, if any, to the validity of the patent." *Titan Tire*, 566 F.3d at 1376 (citation omitted).

A product infringes a patent if the product's design appears "substantially the same" as the patented design to the "ordinary observer." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc) (quoting *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)).[4]

Infringement of a design patent is based on the design as a whole, and not on any "points of novelty." *Id.* at 665. This sort of "overall comparison" is one that takes account of the "significant differences between the two designs, not minor or trivial differences that exist between any two designs that are not exact copies of one another." *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009). A comparison of the patented design to prior art serves to focus the infringement analysis "on those aspects of [the patented] design which render the [patented] design different from prior art designs." *Egyptian Goddess, Inc.*, 543 F.3d at 677.

Plaintiff argues that Defendants' JoeyBra product copies his patented design, as it appears to the ordinary observer to be substantially the same. Specifically, Plaintiff states that Defendants' JoeyBra product copies "the very novel element, the pocket in the brassiere, that is the claimed ornamentally novel element of [Plaintiff's] Patent." Plaintiff argues that Defendants cannot escape infringement by pointing out insignificant differences between the JoeyBra and his patented design, when their product copies "the distinguishing feature of Plaintiff's design." To the ordinary observer, Plaintiff contends, the design of Defendants' product is substantially the same as his patented design.

---

[4] More fully, under the relevant test, "if, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham*, 81 U.S. at 528.

Considering the overall appearance of the claimed design and the allegedly infringing product, for the purpose of this preliminary injunction motion, I find that Plaintiff has failed to show that he is likely to succeed on the merits of his claim for infringement. While Defendants have not submitted prior art in this case, a brief patent search reveals that a pocketed bra is, in fact, not a "very novel element." *See* U.S. Patent No. 7,753,759 B2 (issued July 13, 2010). Furthermore, though the pocket on Defendants' JoeyBra product is, like Plaintiff's claimed design, on the side of the bra (rather than the cup), the size, orientation, and accessibility of that feature appear to be substantially different; as a consequence, and more significantly, the carrying capacity and overall functionality of the allegedly infringing product also appear substantially different. The pocket on Plaintiff's design appears to be fit for a key, and after twelve years since receiving his patent, he does not have a product on the market.[5] Defendants' JoeyBra product, on the other hand, holds an iPhone and credit cards, among other items. At this point, for the purpose of Plaintiff's motion for a preliminary injunction, I find that Plaintiff has not established a reasonable likelihood of success on his infringement claim.[6]

 

---

[5] During the September 5, 2012 motion hearing, Plaintiff acknowledged that, at the moment, his patented design was not being manufactured. During the March 4, 2013 status hearing, Defendants confirmed that Plaintiff has a website, but a potential customer is unable to place an order for shipment. And while Plaintiff's website (www.mirageapparel.us) features model products with large, horizontal pockets holding items like cell phones, there is nothing for sale at this time (last visited March 20, 2013).

[6] As a possible defense, an alleged infringer may assert the invalidity of the patent under 35 U.S.C. § 282. In other words, "he may attempt to prove that the patent never should have issued in the first place." *Microsoft Corp. v. i4i Ltd. Partnership,* 131 S.Ct. 2238, 2242 (2011) (citing §§ 282(2), (3)). However, Defendants have not raised that issue here, and thus a discussion of validity is unwarranted at this time.

Image of Plaintiff's '541 Patent (left) (*see* Compl. Ex. A), and image of Defendants' JoeyBra product (www.joeybra.com).

### 2. *Irreparable Harm*

"A party seeking injunctive relief must make 'a clear showing' that it is at risk of irreparable harm, which entails showing 'a likelihood of substantial and immediate irreparable injury.'" *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012) (quoting *Winter*, 555 U.S. at 22 and *O'Shea v. Littleton*, 414 U.S. 488 (1974)).  As a general rule, plaintiffs seeking injunctive relief must demonstrate that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Here, a court may consider whether such an award could adequately compensate a plaintiff for things like "market share and revenue loss," *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008), the likelihood of price erosion, *see Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001), the loss of customer goodwill and research and development support, *see Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996), and the loss of other market opportunities that cannot be quantified or adequately compensated, *see Polymer Techs., Inc. v. Bridewell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996).  The burden is on the plaintiff to provide "[s]ome evidence and reasoned analysis for that inadequacy." *Nutrition 21 v. U.S.*, 930 F.2d 867, 872 (Fed. Cir. 1991) (citation omitted).

Plaintiff argues that Defendants' aggressive marketing campaign has increased their exposure to the consuming public, and increased their sales at Plaintiff's expense.  On the other hand, Defendants contend that the publicity that Plaintiff cites arrived due to their entry in a business competition and their subsequent sales, rather than active media outreach.  In any case, both parties have represented to the Court that Plaintiff does not have a product for sale at this

time. Furthermore, Plaintiff has not produced any specific evidence regarding projected losses in profits, market share, customer goodwill, or other relevant considerations. *Cf. Robert Bosch LLC v. Pylon Manufacturing Corp.*, 659 F.3d 1142, 1152-55 (Fed. Cir. 2011) (finding irreparable harm where plaintiff presented evidence that (1) the parties were direct competitors; (2) there was a loss of market share and potential customers; and (3) due to financial problems, the infringer might not be able to satisfy a monetary judgment). In support, Plaintiff has only cited media coverage of the JoeyBra product, and the Defendants' Kickstarter fundraising page. Defendants' sales are readily quantifiable for the purpose of future damages, and Plaintiff has not shown that monetary damages would be inadequate in this case. At this time, I find that Plaintiff has failed to demonstrate that he is at risk of irreparable harm in the absence of injunctive relief.

### 3.  Balancing the Equities

The third factor in determining whether a preliminary injunction should issue requires a court to examine the balance of hardships between the two parties. *Hybritech*, 849 F.2d at 1457. Here, a court weighs the hardship to the patentee if no injunction is entered, against the harm to the alleged infringer if the injunction is granted incorrectly. *Id.* The court only needs to consider the balance, and it may grant preliminary relief even if "neither party has a clear advantage." *Id.* at 1458.

In support of his position, Plaintiff only states that Defendants "deliberately continue[] to mimic [Plaintiff's] design and to infringe his Patent," and "[t]he fact that Defendants might have to expend resources or suffer inconvenience to design their own products . . . is a consequence of their decision to copy [Plaintiff's] Patent." Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. 9-10. These are accusations that, of course, Defendants have denied. On the other hand, as discussed, Plaintiff has not presented any specific evidence regarding how the status quo will be altered if

interim infringement is authorized, even without a product on the market. Given this fact, and in view of my earlier findings regarding Plaintiff's case for infringement and irreparable harm, I find that the equities tip in favor of the Defendants when considering whether a preliminary injunction should issue in this case.

### 4. The Public Interest

In a patent case, "the public is best served by enforcing patents that are likely valid and infringed." *Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006). However, "as [the plaintiff] did not establish a likelihood of success on the merits," the Federal Circuit in *Abbot Labs* held "that the public interest [was] best served by denying the preliminary injunction." *Id.* Similarly, at this stage, I find that Plaintiff has failed to establish a reasonable likelihood of success on his infringement claim. With the JoeyBra, the public has access to a well-reviewed product, while Plaintiff has yet to bring his claimed design to the market, despite receiving his patent over a decade ago. If necessary, subsequent sales of the Defendants' product can be quantified for the purpose of monetary damages. Accordingly, I find that the public interest is best served by denying Plaintiff's request for a preliminary injunction.

### B. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, as to the Individual Defendants Kyle Bartlow, Mariah Gentry, and Does 1-5

As stated, Defendants previously filed a motion to dismiss for lack of personal jurisdiction and improper venue, and in the alternative, sought transfer to the Western District of Washington. I denied Defendants' motion to dismiss as to the Defendant JoeyBra LLC, and I granted Plaintiff's request for jurisdictional discovery as to the individual Defendants Kyle Bartlow, Mariah Gentry, and Does 1-5. Now, for the following reasons, I will grant Defendants' motion to dismiss for lack of personal jurisdiction as to the individual Defendants.

Plaintiff argues that the individual Defendants should, like their LLC, be subject to personal jurisdiction in the Western District of Virginia. In his most recent memorandum, Plaintiff highlights the personal nature of Mr. Bartlow and Ms. Gentry's advertisement on their Kickstarter page, and notes that the only means of contacting the Defendants in connection with that solicitation was through Ms. Gentry's Facebook account. As a result, Plaintiff contends that the three Virginia residents who backed the Defendants' company, and in return received JoeyBra shipments, entered into unilateral contracts with Mr. Bartlow and Ms. Gentry as individuals, rather than as agents of JoeyBra LLC. And because Defendants "shipped the accused [product] into Virginia through an established distribution channel," *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994), Plaintiff contends that Mr. Bartlow and Ms. Gentry, along with their LLC, satisfied the "tortious injury" requirement of Virginia's long arm statute. *See id.* at 1558 (citing Va. Code 1950, § 8.01–328.1).

However, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). All sales and distribution of the Defendants' JoeyBra product are done solely through JoeyBra LLC, *see* Second Decl. of Mariah Gentry ¶ 5 (docket no. 24-1), so that this Court could not properly exercise personal jurisdiction over the individuals Defendants under the stream of commerce theory discussed in *Beverly Hills*. *See Beverly Hills Fan Co.*, 21 F.3d at 1565-66. Further, there is nothing in the record suggesting that Mr. Bartlow or Ms. Gentry, as individuals, committed a necessary "affirmative act" in Virginia for this Court to exercise personal jurisdiction over them.[7] The record confirms that neither Defendant has traveled to Virginia to promote their product, reach out to potential

---

[7] "Under 35 U.S.C. § 271(a), only an affirmative act (making, using, or selling the patented design) can give rise to the tort of direct infringement. Likewise, under governing case law, a person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *Beverly Hills Fan Co.*, 21 F.3d at 1570 n.25 (citations and internal quotation omitted).

donors, make sales, or otherwise advance their business. *See* Gentry Decl. ¶ 14 (docket no. 18-1); *cf. Campbell Pet Co. v. Miale*, 542 F.3d 879, 889 (Fed. Cir. 2008) (individual defendant was not insulated from personal jurisdiction by fact of acting in her official capacity as company president when she promoted and sold allegedly infringing products while attending a convention in the forum state).

In regards to advertising, there is no evidence that Mr. Bartlow or Ms. Gentry directed their Kickstarter campaign specifically to Virginia. Indeed, Ms. Gentry states that the individual Defendants "do not run any ads in Virginia, nor do [they] target any ads toward Virginia." Gentry Decl. ¶ 8. Kickstarter.com, due to its online nature, is equally accessible in all states. *See, e.g.*, *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1347 (Fed. Cir. 2012) (declining to extend personal jurisdiction over corporate defendant who advertised in a publication that "was nationally distributed and not limited to [forum state] . . . [and] appellants could not show that [defendant] targeted the [forum state] market at all."). Thus, even without considering the fiduciary shield, the Defendants' advertising campaign on Kickstarter.com cannot, by itself, be the basis for this Court to exercise personal jurisdiction over the individual Defendants.

In regards to the three Kickstarter donations Defendants received from Virginia residents, and the products that were shipped, "the fiduciary shield doctrine buffers corporate officers from personal jurisdiction when their official duties were their only contact with a forum state." *Id.* (declining to exercise jurisdiction over the only two shareholders of corporate defendant) (citation omitted). Plaintiff argues that "[i]f [Gentry and Bartlow] were acting as agents of JoeyBra LLC, they would have identified that entity as the party that the Kickstarters were contracting with." Pl.'s Second Supp. Mem. in Opp. 10. However, the Defendants' Kickstarter page is titled "JoeyBra, the first sexy and comfortable bra! by JoeyBra", and prominently

13

features pictures and favorable reviews of the product. The record also shows that those three Virginia donors received the JoeyBra product in return for their $30.00 contribution, and that the individual Defendants did not directly profit from donations that their company received. *See* Second Gentry Decl. ¶ 9 ("Because these donations were made through the Kickstarter program, we had no direct way of returning the donations by these individuals to them; however, we are currently working with Amazon Payments to refund these donations made by VA residents.").

In short, Mr. Bartlow and Ms. Gentry's advertisement on Kickstarter.com is personal in nature for the purpose of promoting their JoeyBra product. There is no evidence that either Mr. Bartlow or Ms. Gentry committed any affirmative act in Virginia to support this Court's exercise of personal jurisdiction over them. *See, e.g.*, *SubAir Systems, LLC v. PrecisionAire Systems, Inc.*, 2007 WL 2822910, at *5 (D.S.C. Sept. 27, 2007) (granting motion to dismiss corporate president and sole owner of the accused infringer corporation for lack of personal jurisdiction since there was no showing that the officer committed any acts in the forum to induce the corporation's alleged infringement.).[8] Throughout their advertising on Kickstarter.com, communications with donors, and ultimately, fulfillment of product orders, the individual Defendants were at all times acting in their official capacities, on behalf of their LLC.[9]

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary injunctive relief is denied, and Defendants' motion to dismiss for lack of personal jurisdiction as to the individual

---

[8] Thus, a discussion of venue with regard to these individual Defendants is unnecessary.

[9] In his most recent filing, Plaintiff states that Defendants still have not provided details pertaining to their contacts with the three Kickstarter donors from Virginia. *See* Pl.'s Second Supp. Mem. in Opp. 2-5. However, there is no allegation that Defendants reached out to Virginia residents in any unsolicited manner. Thus, for the reasons detailed above, the specific content of those conversations with Virginia donors who contacted the Defendants in response to their Kickstarter campaign is not relevant for the purpose of resolving the pending motions.

Defendants Kyle Bartlow, Mariah Gentry, and Does 1-5 is granted. An appropriate order accompanies this memorandum opinion.

The clerk of the court is hereby directed to send a certified copy of this memorandum opinion to all counsel of record.

Entered this \_\_22nd\_\_ day of March, 2013.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

15