IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CHARLES ROBINSON,<br>        *Plaintiff,*<br><br>    v.<br><br>JOEYBRA LLC,<br>        *Defendant.* | CASE NO. 3:12-cv-00024<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Plaintiff's motion for reconsideration of the Court's March 22, 2013 order denying his request for a preliminary injunction. A telephonic hearing on this motion took place on May 6, 2013. For the following reasons, I will deny Plaintiff's motion.

## I. BACKGROUND

Plaintiff filed his complaint in May 2012, alleging that Defendant's JoeyBra Product infringes on a patent he received in 2001 for a pocketed bra design. The memorandum opinion accompanying the March 22, 2013 order examined each element that Plaintiff needed to show to obtain a preliminary injunction: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities are in his favor, and (4) an injunction is in the public's interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 375 (2008). The Court found that Plaintiff had not met his burden of proof, and denied his request for injunctive relief.

## II. LEGAL STANDARD

Under Rule 54 of the Federal Rules of Civil Procedure, "[A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be

1

revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Motions for reconsideration of interlocutory orders are not subject to the same strict standards applicable to motions for reconsideration of final judgments," *Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003), and the court may exercise its discretion to afford relief "as justice requires." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1473 (4th Cir. 1991). However, courts have used the same factors to guide their discretion under Rule 54(b), and generally do not grant such motions unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Am. Canoe Ass'n*, 326 F.3d at 515 (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)).

### III.   DISCUSSION

Plaintiff moves for reconsideration based on two primary arguments: (1) the Court erroneously determined that Plaintiff's patent was likely not novel; and (2) the Court erroneously determined that the JoeyBra Product's design was "substantially different" from Plaintiff's patent. Both fall under the first *Winter* factor, regarding Plaintiff's likelihood of succeeding on the merits of his patent infringement claim.

#### A.  The Court's Finding that a Pocketed Bra is Not a Very Novel Element

Plaintiff begins his motion by arguing that the Court made an incorrect legal conclusion when it stated that "a brief patent search reveals that a pocketed bra is, in fact, not a 'very novel element.'" Mem. Op. at 8. Plaintiff argues that the Court's citation to a 2010 patent, when his own patent was issued in 2001, "is contrary to the plain language of federal patent statutes," which require the Court to presume that Plaintiff's patent is valid. *See* 35 U.S.C. § 282.

To be clear, the Court never disputed the presumed validity of Plaintiff's patent. In fact, in the March 22, 2013 memorandum opinion, regarding the validity of Plaintiff's patent, the Court stated as follows:

> As a possible defense, an alleged infringer may assert the invalidity of the patent under 35 U.S.C. § 282. In other words, "he may attempt to prove that the patent never should have issued in the first place." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011) (citing §§ 282(2), (3)). However, Defendants have not raised that issue here, and thus a discussion of validity is unwarranted at this time.

Mem. Op. at 8 n.6. The earlier citation to a 2010 patent was merely to indicate that at least one patent has issued for a pocketed bra design since Plaintiff received his 2001 patent. In other words, I found it worth noting that there has not been a bar on other pocketed bra design patents as a result of Plaintiff's design. The Court was in no way challenging the presumed validity of Plaintiff's 2001 patent.

As stated in the memorandum opinion, infringement of a design patent is based on the design as a whole, and not on any "points of novelty." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc). Ultimately, the Court's citation to a 2010 patent was a minor observation within the larger discussion of Plaintiff's likelihood to succeed on the merits of his infringement claim—the first of four factors the Court considered before denying Plaintiff's motion for injunctive relief. Far more crucial in the determination of Plaintiff's likelihood of success on the merits was the Court's comparison of Plaintiff's patent to the JoeyBra Product from the perspective of an "ordinary observer," leading to the Court's conclusion that the JoeyBra Product design was substantially different from that of Plaintiff's patent.

## B. The Court's Finding that the JoeyBra Product Design was Substantially Different from Plaintiff's Patent

Plaintiff also contends that the Court erroneously determined that the JoeyBra Product design was substantially different from his patented design. A product infringes a patent if the product's design appears "substantially the same" as the patented design to the "ordinary observer." *Egyptian Goddess*, 543 F.3d at 678 (quoting *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)).[1] In the March 22, 2013 memorandum opinion, the Court found "the size, orientation, and accessibility" of the pocket on Defendant's JoeyBra Product to be substantially different from Plaintiff's design. As a result of those differences, the Court continued, the carrying capacity and overall functionality of the JoeyBra also appear to be substantially different. Mem. Op. at 8 ("The pocket on Plaintiff's design appears to be fit for a key . . . . Defendant's JoeyBra product, on the other hand, holds and iPhone and credit cards, among other items.").

Plaintiff argues that when comparing his patent to Defendant's JoeyBra Product, the Court erred in assuming that his patent drawings were to scale. In support, Plaintiff cites the Manual of Patent Examining Procedure, published by the United States Patent and Trademark Office, which notes that the "proportions of features in a drawing are not evidence of actual proportions when drawings are not to scale." 2 Practitioner's Manual of Patent Examining Proc. § 2125 (June 2011) (citing *Hockerson-Halberstadt, Inc. v. Avia Group Int'l*, 222 F.3d 951, 956 (Fed. Cir. 2000)).

However, a "patented design," such as Plaintiff's in this case, "is defined by the drawings in the patent." *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001)

---

[1] More fully, under the relevant test, "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Co.*, 81 U.S. at 528.

(quoting *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993)). Indeed, Plaintiff's patent claim is for "the ornamental design for a brassiere, as shown and described." *See* U.S. Design Patent No. D448,531 S (issued Oct. 2, 2001). Thus, the shape, size, and relative location of the pockets in Plaintiff's patent drawings are relevant to the Court's analysis of his whole design, and were taken into account in the Court's determination of Plaintiff's likelihood of success on the merits of his claim. *See Egyptian Goddess, Inc.*, 543 F.3d at 679 ("[T]he court has recognized that design patents typically are claimed as shown in drawings, and that claim construction is adapted accordingly.") (citation and internal quotations omitted).[2]

Plaintiff also contends that any difference in the pocket size between his patent and the JoeyBra Product is trivial and insufficient to escape a finding of infringement under the "doctrine of equivalents." The doctrine of equivalents prevents an accused infringer from avoiding liability where its product has only minor or insubstantial differences from the claimed invention and retains the invention's essential identity. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 234 F.3d 558, 564 (Fed. Cir. 2000), *overruled on other grounds*, 535 U.S. 722, 122 S. Ct. 1831 (2002).[3] It is a "limited doctrine," and "should not be applied so broadly that it becomes 'the second prong of every infringement charge, regularly available to extend protection beyond the scope of the claims[.]'" *W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 874

---

[2] The March 22, 2013 memorandum opinion included side-by-side illustrations of Plaintiff's patented design and Defendant's product, consistent with the Supreme Court's recognition that "a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'" *Id.* (quoting *Dobson v. Dornan*, 118 U.S. 10, 14, 6 S. Ct. 946 (1886)).

[3] The other way of showing infringement under the doctrine of equivalents is by showing that an element of an accused product "'performs substantially the same function in substantially the same way to obtain the same result' as an element of the patented invention." *American Calcar, Inc. v. American Honda Motor Co., Inc.*, 651 F.3d 1318, 1338 (Fed. Cir. 2011) (quoting *TIP Sys., LLC v. Philips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1376 (Fed. Cir. 2008)).

F. Supp. 2d 526, 542 (E.D. Va. 2012) (quoting *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991)).

To support an infringement finding under the doctrine of equivalents, the burden is on the patent owner to provide "particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device or process . . . ." *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) (internal quotations omitted). Plaintiff has not submitted any expert testimony to support a specific case for equivalency.

Furthermore, the Federal Circuit has stated that "[t]he substantial similarity test [for design patent infringement] by its nature subsumes a doctrine of equivalents analysis," *Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 93 F. App'x 214, 217 (Fed. Cir. 2004) (citation omitted), and the *Egyptian Goddess* court later clarified the test for design patent infringement without articulating a separate inquiry under the doctrine of equivalents. *See Egyptian Goddess*, 543 F.3d at 670, 676. When comparing illustrations of the JoeyBra and Plaintiff's patented design, the Court found that the JoeyBra Product appeared substantially different from Plaintiff's design. For the foregoing reasons, Plaintiff cannot now cite the doctrine of equivalents to overturn the Court's finding that Plaintiff failed to establish a reasonable likelihood of success on the merits of his infringement claim.

### C.  Irreparable Harm and the Public Interest

Plaintiff adds in his reply that the public interest is best served by granting an injunction, and that he will suffer irreparable harm if the Court's order denying his request is upheld. Regarding irreparable harm, Plaintiff states that he sold a pocketed bra design worldwide, including in the United States, between 2000 and 2004. Plaintiff contends that allowing

Defendant to continue to sell the JoeyBra Product will lead to gains in the market share by JoeyBra LLC, "and a loss of goodwill that would otherwise flow to Mirage Apparel, LLC, when its products fully enter the market in the near future."

During a hearing held on September 5, 2012, Plaintiff acknowledged that his 2001 patent design allegedly being infringed in this case was not being manufactured at this time. *See* Transcript of Record at 31-33 (docket no. 30). Indeed, as Defendant has confirmed at various points throughout this litigation, there is nothing for sale on Plaintiff's website, mirageapparel.us (last visited May 7, 2013). *See id.* at 32, lines 3-5 ("We have kind of had to rush a lot of the [mirageapparel.us] website through and get everything up on the website just purely for evidence reasons for this case . . . ."). In any case, as discussed in the Court's March 22, 2013 memorandum opinion, Plaintiff has not produced any specific evidence regarding projected losses in profits, market share, customer goodwill, or other relevant considerations to support a showing of irreparable harm in this case.[4]

Lastly, regarding the Court's finding that a preliminary injunction does not serve the public interest, Plaintiff disagrees in his reply with the Court's statement that, with the JoeyBra, the public currently has access to a "well-reviewed product." Mem. Op. at 11. In support, Plaintiff cites to what he purports to be negative comments from internet customers about the JoeyBra Product. However, the Court's statement that the JoeyBra Product was "well-reviewed" merely refers to the fact that the JoeyBra advanced in a 2012 business plan competition, and has

---

[4] As stated in the memorandum opinion, a plaintiff seeking injunctive relief must demonstrate that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). A court may consider whether such an award could adequately compensate a plaintiff for things like "market share and revenue loss," *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008), the likelihood of price erosion, *see Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001), the loss of customer goodwill and research and development support, *see Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996), and the loss of other market opportunities that cannot be quantified or adequately compensated, *see Polymer Techs., Inc. v. Bridewell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996). The burden is on the plaintiff to provide "[s]ome evidence and reasoned analysis for that inadequacy." *Nutrition 21 v. U.S.*, 930 F.2d 867, 872 (Fed. Cir. 1991) (citation omitted).

since garnered positive news coverage online. Plaintiff attached printouts of many of those news articles to his memorandum in support of his motion for a preliminary injunction (*see* docket no. 8), including stories from the Huffington Post ("JoeyBra: Genius New Bra Hides iPhone and Other Valuables"), Forbes ("Don't Know Where to Put Your iPhone? There's a Bra For That"), and MSNBC ("New bra is made to carry an iPhone"). Highlights from those articles and others are included on Defendant's Kickstarter homepage, which Plaintiff has cited numerous times as well.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration of the Court's March 22, 2013 order denying his request for a preliminary injunction (docket no. 51) is denied. An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this __8th__ day of May, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE